**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

NAVIGATORS INSURANCE COMPANY,
a foreign corporation,                           **No. 03:12-cv-02076-HU**

                    Plaintiff,

vs.

K & O CONTRACTING, LLC, an Oregon   **FINDINGS & RECOMMENDATIONS**
limited liability company; TOM      **ON MOTION FOR SUMMARY JUDGMENT**
WALSH & CO., an Oregon corporation;
and HOME FORWARD, an Oregon Public
Body Corporate and Politic, *fka*
Housing Authority of Portland, an
Oregon Public Body Corporate and
Politic;

                    Defendants.
        _____

Eric Jay Neal
Thomas Lether
Lether & Associates, PLLC
3316 Fuhrman Avenue East, Suite 250
Seattle, WA 98102

        Attorneys for Plaintiff


John M. Silk
Wilson Smith Cochran & Dickerson
1215 Fourth Avenue, Suite 1700
Seattle, WA 98161-1007

        Attorney for Defendant K & O Contracting, LLC

Peter J. Viteznik
Kilmer Voorhees & Laurick
732 N.W. 19th Avenue
Portland, OR 97209

J. Lee Street
P.O. Box 881
Gladstone, OR 97027-0881

        Attorneys for Defendant Home Forward


1  - FINDINGS & RECOMMENDATIONS

HUBEL, Magistrate Judge:

In this action, plaintiff Navigators Insurance Company ("Navigators") seeks a declaration that it has no duty to defend or indemnify any of the defendants in connection with a civil action filed in Multnomah County Circuit Court entitled *Home Forward fka Housing Authority of Portland v. Tom Walsh & Co.*, No. 1207-08537 (the "Underlying Action"). Currently before the court is a motion for summary judgment filed by Navigators. Dkt. #26. The matter is fully briefed, and the court heard oral argument on the motion on September 23, 2013. The undersigned submits the following findings and recommended disposition of the case pursuant to 28 U.S.C. § 636(b)(1)(B).

Preliminarily, the court notes that although the motion was filed as to all three defendants, Navigators subsequently settled its claims against the defendant Tom Walsh & Co. ("Walsh"), and Walsh has been dismissed from the case. *See* Dkt. ##40 & 41. Therefore, the motion for summary judgment is moot as to Walsh. In addition, despite being alerted that its failure to respond would result in waiver of argument, *see* Dkt. #37, the defendant Home Forward did not respond to the motion for summary judgment. As a result, as to Home Forward, the court considers the facts set forth by Navigators in its memorandum to be "undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2).

### BACKGROUND FACTS

The facts underlying this case are undisputed. Sometime in approximately 2004 to 2005, Home Forward contracted with Walsh

to act as general contractor for construction of the Willow Tree Apartments in Portland, Oregon, a complex consisting of eighteen residential units and a community center. *See* Dkt. #28-2, ¶¶ 2-4.   The defendant K & O Contracting, LLC ("K&O") was one of Walsh's subcontractors for certain portions of the project. *See* Dkt. #28-4, ¶ 6. At some point after construction was complete, Home Forward "began experiencing various water leaks and water intrusion into the interiors" of the apartments and the community center, resulting in current and ongoing property damage of at least $1.65 million. Dkt. #28-2, ¶ 9; *see id.*, ¶ 10.

Home Forward notified Walsh of these problems, claiming they were the result of "construction defects, design defects, violations of the applicable state and local building codes, and violations of the relevant industry standards," involving the exterior walls; windows and doors; decks, balconies, walkways, and landings; pitched roofing; and some miscellaneous areas of the property. *Id.*, ¶ 10.  On February 9, 2012, Walsh notified K&O that K&O "may be held responsible for some of the alleged defects and/or damages." Dkt. #28-8, p. 2.  In the notice letter, Walsh stated, "Upon information and belief, Willow Tree was constructed in 2004-2005." *Id.*

Navigators issued Commercial General Liability policies to K&O, providing coverage from July 12, 2010, through July 12, 2012 (collectively, the "Policy"). Dkt. ##29-1, 29-2.   K&O tendered defense and indemnity on Walsh's behalf to Navigators. *See* Dkt. #28-10. On March 6, 2012, Navigators responded to K&O, stating Navigators had "no duty to defend or indemnify [Walsh]

3  - FINDINGS & RECOMMENDATIONS

for this claim," because Walsh was neither a named insured, nor
an additional insured under the Policy. *Id.*, pp. 2, 10.    In
addition, Navigators stated Endorsement ANF ES 164 7/05 to the
policy "exclude[d] work done before inception of K&O's policies
with Navigators." *Id.*, p. 10.    Navigators noted information
provided by Walsh indicated the Willow Tree Apartments "were
constructed between 2004 and 2005," which was "well before the
inception of the Navigators policies[.]" *Id.*, pp. 2, 10.
Therefore, because "work on the project was completed in 2005,"
Navigators determined it had "no duty [to] indemnify or defend
K&O Contracting or Tom Walsh in this claim." *Id.*, p. 11.
Navigators directed K&O to provide it with a copy of any lawsuit
filed with regard to the matter for review. *Id.*, p. 12.

On July 6, 2012, Home Forward filed the Underlying Action
against Walsh, and others, in connection with "certain
development, construction and/or property management activities"
performed by Walsh at the Willow Tree project. Dkt. #28-2, p.
3.    Home Forward asserted claims against Walsh in the Underlying
Action for breach of contract, negligence, and contractual
indemnity. *Id.*, pp. 7-10, 14-16, 20-22.

On or about August 10, 2012, Walsh filed a third-party
complaint in the Underlying Action against K&O and other subcon-
tractors. *See* Dkt. #28-4.    Walsh asserted claims against K&O
for contractual and common-law indemnity, and contribution. *Id.*
Walsh repeated the list of alleged defects set forth in Home
Forward's complaint, alleging K&O was liable for certain of the
alleged defects under the terms of the subcontract between Walsh
and K&O. *See* Dkt. #28-4, pp. 3-5.    Nowhere in Walsh's third-

4  - FINDINGS & RECOMMENDATIONS

party complaint (and, indeed, nowhere in Home Forward's complaint against Walsh in the Underlying Action) are any allegations made regarding the dates when construction took place, or was completed, on the Willow Tree project. *See* Dkt. #28-4.

K&O forwarded Walsh's third-party complaint to Navigators for review. Navigators determined that Walsh's third-party complaint "was ambiguous in time, but nonetheless alleged defects in the 2005 original construction" of the Willow Tree project. Dkt. #28, ¶ 13. Despite this determination, Navigators undertook the defense of K&O in the Underlying Action, subject to an express reservation of rights. *See* Dkt. ##28-6, 28-7. Navigators subsequently filed the current action, seeking a declaration that it owes no duty to defend or indemnify K&O, Walsh, or Home Forward in connection with the Underlying Action. As noted previously, Walsh has settled its claims with Navigators, and Home Forward takes no position on the motion. In addition, K&O "does not contest Navigators' motion as it relates to the duty to indemnify K&O in the Underlying [Action]," arguing only that Navigators has an ongoing duty to defend K&O in the Underlying Action. Dkt. #33, p. 5.

In its motion for summary judgment, Navigators argues the Policy's exclusion for prior completed work is dispositive of the case, and the court should issue an order declaring that Navigators has no duty to defend or indemnify K&O or Home Forward in the Underlying Action. *See* Dkt. #27.

K&O argues Navigator has a duty to defend K&O because Walsh's third-party complaint against K&O in the Underlying

5  - FINDINGS & RECOMMENDATIONS

Action contains no allegations from which application of the prior completed work exclusion could be determined; that is, the third-party complaint contains no allegations at all regarding the dates when K&O completed its work on the Willow Tree project. Dkt. #33. K&O notes Navigators is attempting to rely on the notice of claim sent by Walsh's attorneys to K&O, which states, "[u]pon information and belief, [that] Willow Tree was constructed in 2004-2005." Dkt. #28-8, p. 2. K&O argues the duty to defend is determined exclusively by the allegations set forth in the third-party complaint and the terms of the policy, and Navigators may not rely on extrinsic materials, such as Walsh's notice of claim, as a basis for denying its duty to defend. Dkt. #33, *passim*. K&O relies on *Bresee Homes, Inc. v. Farmers Insurance Exchange*, 353 Or. 112, 293 P.3d 1036 (2012), in support of its position. Navigators argues *Bresee* is distinguishable on its facts, and further, that the court may consider extrinsic evidence that incontrovertibly establishes the insurer has no duty to defend. Dkt. #38, *passim*. Navigators relies primarily on *Casey v. Northwestern Security Insurance Co.*, 260 Or. 485, 491 P.2d 208 (1971); and *Fred Shearer & Sons, Inc. v. Gemini Insurance Co.*, 237 Or. App. 468, 240 P.3d 67 (2010)).

### *SUMMARY JUDGMENT STANDARDS*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of

6 - FINDINGS & RECOMMENDATIONS

the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S. Ct. 2505.

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

7 - FINDINGS & RECOMMENDATIONS

*DISCUSSION*

1
2      The parties agree that Oregon law governs the substantive
3  issues in this case.  The "fighting issue" between the parties,
4  in determining whether Navigators has a duty to defend K&O in
5  the Underlying Action, is whether the court may look outside the
6  allegations on the face of Walsh's third-party complaint (or
7  perhaps Home Forward's complaint against Walsh), and the Policy
8  language, to determine whether the alleged conduct occurred
9  within the time period during which K&O was covered by the
10 Policy.
11     In *Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80 (1994), the
12 Oregon Supreme Court explained the general standards for deter-
13 mining whether an insurer has a duty to defend its insured
14 against a particular claim.  The *Ledford* court held the
15 insurer's duty to defend "depends on two documents: the
16 complaint and the insurance policy," with the duty to defend
17 arising when "the claim against the insured stated in the
18 complaint could, without amendment, impose liability for conduct
19 covered by the policy." *Ledford*, 319 Or. at 399-400, 877 P.2d
20 at 82 (citing *Nielsen v. St. Paul Cos.*, 283 Or. 277, 280, 583
21 P.2d 545, 547 (1978); *Oakridge Comm. Ambulance v. U.S. Fidelity
22 & Guar. Co.*, 278 Or. 21, 24, 563 P.2d 164, 166 (1977); *Ferguson
23 v. Birmingham Fire Ins.*, 254 Or. 496, 507, 690 P.2d 342, 347
24 (1969)).  In making this analysis, "the court looks only at the
25 facts alleged in the complaint to determine whether they provide
26 a basis for recovery that could be covered by the policy[.]"
27 *Ledford*, 319 Or. at 400, 877 P.2d at 82 (citations omitted).
28 The face of the complaint, itself, should allow the insurer to

8  - FINDINGS & RECOMMENDATIONS

determine whether it has a duty to defend the insured. *Id.* The duty to defend arises "if the complaint provides *any basis* for which the insurer provides coverage." *Ledford*, 319 Or. at 400, 877 P.2d at 83 (emphasis in original; citation omitted). This is true even if some of the conduct alleged in the complaint falls outside the policy's coverage, with any ambiguity as to coverage being "resolved in favor of the insured." *Id.* The "analysis focuses on the *allegations* in the complaint[] rather than the claims identified in it." *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Starplex Corp.*, 220 Or. App. 560, 584, 188 P.3d 332, 346-47 (2008) (emphasis in original; internal quotation marks, citation omitted); *accord Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, ___ F.3d ___, 2013 WL 4615055, at *9 (9th Cir. Aug. 30, 2013) (quoting *Starplex*).

Thus, in general, the court is limited to considering only the facts alleged in the complaint and the policy language, "*regardless of whether information extrinsic to the complaint could establish that the claim at issue is not covered*." *Keizer Campus Ops., LLC v. Lexington Ins. Co.*, slip op., 2013 WL 4786521, at *2 (D. Or. Sept. 5, 2013) (Aiken, CJ) (emphasis added; citing *Ledford*, 319 Or. at 400, 877 P.2d at 83). The court looks to these two documents "to determine whether the claim could impose liability for occurrences covered by the policy." *Spada v. Unigard Ins. Co.*, 80 Fed. Appx. 27, 29 (9th Cir. 2003) (citing *Ledford*, 319 Or. at 400, 877 P.2d at 82). The courts have recognized several exceptions to this general rule. For example, an exception noted by Judge Aiken in *Keizer* allows a court to consider "extrinsic evidence of the date a

9 - FINDINGS & RECOMMENDATIONS

claim was noticed to an insured when analyzing an insurer's duty to defend under a claims-made policy." *Id.* (internal quotation marks, citation omitted). Another limited exception applies "in instances when courts are attempting to determine whether an organization or individual was an insured under a policy." *Clarendon Am. Ins. Co. v. State Farm Fire & Cas. Co.*, slip op., 2013 WL 54032, at *6 (D. Or. Jan. 3, 2013) (Brown, J.); *see Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 240 P.3d 67 (2010). Neither of these exceptions applies to the exclusion Navigators is pressing here.

Still another exception applies when there is a judicial determination that precludes coverage, such as the criminal conviction of an insured for intentional injury which estops the insured from claiming the injury was unintentional. *See Bresee*, 53 Or. at 124-25, 293 P.3d at 1043 (discussing the holding in *Casey*, noting the exception is "a narrow one"). Navigators argues K&O's concession that Navigators has no duty to indemnify K&O in the Underlying Action "is the equivalent of an incontrovertible 'court determination that precludes coverage like the criminal court adjudication considered in *Casey*.'" Dkt. #38, p. 13 (quoting *Bresee*, 353 Or. at 125, 293 P.3d at 1043). That argument ignores Oregon's recognition that "[t]he duty of an insurer to defend is not coextensive with the duty to indemnify." *Klamath Pac. Corp. v. Reliance Ins. Co.*, 151 Or. App. 405, 413, 950 P.2d 909, 913 (1997).

Despite the efforts of Navigators to distinguish *Bresee*, the case appears to be directly on point in the present inquiry. On April 2, 1999, Bresee Homes entered into a contract with the

Joneses to act as contractor for construction of the Joneses'
custom home.    On July 15, 2005, the Joneses sued Bresee,
alleging improper installation of flashing that had caused the
exterior synthetic stucco finish on the home to fail due to
water leakage. Bresee tendered the claim to its insurer, Farmers
Insurance Exchange ("Farmers"), under a commercial liability
policy issued by Farmers to Bresee, that was in effect from the
late 1980s until June 17, 2003.  Farmers "denied the tender,
citing the 'products - completed operations hazard' exclusion in
the policy." *Bresee*, 353 Or. at 114-15, 293 P.3d at 1038.

Bresee sued Farmers for breach of contract and a declaratory
judgment that Farmers had a duty to defend Bresee in the
Joneses' action, and to indemnify it for any liability to the
Joneses.   The parties filed cross-motions for summary judgment.
Among other things, Bresee argued the trial court should
consider extrinsic evidence that Farmers had adjusted and
settled numerous nearly-identical damage claims made against
Bresee by other homeowners. Bresee claimed the extrinsic
evidence was relevant to demonstrate the parties' intent with
regard to similar claims, and also to prove "Farmers had waived
its position that the 'products - completed operations hazard'
endorsement precluded any coverage of the Joneses' claim against
Bresee." *Bresee*, 353 Or. at 115, 293 P.3d at 1938.

The trial court granted Farmers's motion and denied Bresee's
motion.   Although the trial court found the Joneses' property
damage claim was a type of damage covered under the policy, it
concluded the Joneses' claim was defeated by the "products -
completed operations hazard" exclusion.   Further, the trial

11  - FINDINGS & RECOMMENDATIONS

court "determined that Bresee's claim for a defense was not well taken because Bresee, in submitting evidence on summary judgment, had not established when Bresee's subcontractor had completed the work and when the alleged damage had occurred." *Bresee*, 353 Or. at 115-16, 293 P.3d at 1038.  The Oregon Court of Appeals affirmed.  *Bresee*, 353 Or. at 116, 293 P.3d at 1039.

The Oregon Supreme Court reversed.  Preliminarily, the court noted that claims for a defense and for coverage under a policy "invoke separate contractual obligations governed by different legal standards."  *Id.*  The court relied on *Ledford* in holding the duty to defend arises "[a]s long as the complaint contains allegations that, without amendment, state a basis for a claim covered by the policy[.]"  *Bresee*, 353 Or. at 117, 293 P.3d at 1039; *see id.*, 353 Or. at 116-17, 393 P.3d at 1039.  The *Bresee* court noted "the key question is whether the court can reasonably interpret the allegations [in the complaint] to include an incident or injury that falls within the coverage of the policy. . . . '[N]either the failure to identify correctly the claims nor the failure to state them separately defeats the duty to defend.'"  *Bresee*, 353 Or. at 117, 293 P.3d at 1039 (quoting *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91, 37 P.3d 148, 153 (2001); citing *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 416, 373 P.2d 412, 418 (1962)).

The *Bresee* court reviewed the policy issued by Farmers, including the policy's exclusions.  The court held, first, that "the coverage agreement, and specifically the duty to defend Bresee, would apply to the Joneses' claims if the property damages that their complaint sought constitute[d] 'property

1  damage' to which the policy applied." *Bresee*, 353 Or. at 121,
2  293 P.3d at 1041. Second, the court noted the policy
3  incorporated certain exclusions, among them the "products -
4  completed operations hazard" exclusion relied upon by Farmers.
5  *Id.* The court found this exclusion was "itself subject to an
6  exception . . . for '[w]ork that has not been completed.'"
7  *Bresee*, 353 Or. at 121-22, 293 P.3d at 1041. The court
8  explained that the text of the policy must be construed as a
9  whole, rather than viewing specific portions - such as endorse-
10 ments, exclusions, and exceptions - in isolation. *Id.* The
11 court explained further:

12        We may conclude, after construction of the
          policy as a whole, that a particular
13        provision nullifies or limits coverage or
          that one policy provision controls over
14        another. That conclusion, however, must
          result from the application of familiar
15        principles of interpretation to the policy
          as a whole, not from an attempt to give
16        particular weight or effect to one provision
          because it is an exclusion or exception to
17        the policy's coverage.

18 *Bresee*, 353 Or. at 122, 293 P.3d at 1041-42.
19
20     For purposes of applying the "products - completed
21 operations hazard" exclusion, the *Bresee* court found it
22 significant that the Joneses' complaint did not state "whether
23 the claimed damages from the alleged breach of contract and
24 negligence occurred before or after the completion of Bresee's
25 work. . . . The allegations describe events and damage that
26 occurred in the past, but which could have occurred at any time
27 after contract execution. The allegations describing past
28 deficient performance and damage do not necessarily say anything

13 - FINDINGS & RECOMMENDATIONS

about the date Bresee completed its work." *Bresee*, 353 Or. at 122, 293 P.3d at 1042.

Farmers argued Bresee had the burden to come forward with facts to show its work was not completed at the time of the alleged damage, in order to avoid the effect of the exclusion. The *Bresee* court disagreed, holding "Bresee [had] no burden to come forth with facts beyond those alleged in the Joneses' complaint. . . . Our analysis of the duty to defend focuses on those allegations whether or not different or additional facts might be adduced at trial." *Bresee*, 353 Or. at 123, 293 P.3d at 1042. The Oregon Supreme Court held the Oregon Court of Appeals "was mistaken" in considering extrinsic evidence offered by Farmers to show Bresee's work was completed in 1999, and in considering that Bresee had failed to offer any contradictory evidence. *Id.* The court explained:

> Farmers relied on facts concerning the completion of Bresee's work that were not alleged in the Joneses' complaint. Farmers could discern from facts alleged by the Joneses and from its policy that the Joneses potentially could prove that the claimed damage arose before Bresee completed its work. When Bresee tendered the Joneses' complaint for defense, the factual question of whether the claimed damages had occurred before or after the completion of Bresee's work was an issue that the litigation between the Joneses and Bresee might determine, and, once established, could affect Farmers's duty to indemnify Bresee. The potential factual determinations in that litigation, however, *are not the facts that governed Farmers's duty to defend Bresee.* When Bresee tendered the Joneses' claims, *only the facts alleged by the Joneses and the terms of the Farmers policy governed Farmers's duty to provide a defense.*

*Bresee*, 353 Or. at 123-24, 293 P.3d at 1042 (emphasis added).

14  - FINDINGS & RECOMMENDATIONS

1    Navigators makes arguments in the present case that mirror
2    those made by Farmers in *Bresee*, and a similar analysis applies.
3    When K&O tendered Walsh's third-party complaint to Navigators,
4    the duty of Navigators to defend K&O was governed only by the
5    allegations in Walsh's third-party complaint, and the terms of
6    the Policy.  Relying solely on those documents, Navigators could
7    discern that Walsh potentially could prove K&O was responsible
8    for damage falling within the Policy's coverage language.
9    Although the *factual question* of whether the damage arose from
10   K&O's activities within the effective dates of the Policy could
11   affect the duty of Navigators to *indemnify* K&O (an issue no
12   longer contested by K&O in the present case), that factual
13   determination is irrelevant to the duty of Navigators to defend
14   K&O in the Underlying Action.  *See Bresee, supra*.

15   Navigators claims the *Bresee* court's ruling "turned on the
16   fact that from the underlying complaint the insurer *could have*
17   discerned that the underlying Plaintiffs could prove property
18   damage *occurring prior to the completion of Bresee's work*."
19   Dkt. #27, p. 15 n.5 (emphasis added; citing *Bresee*, 353 Or. at
20   122, 293 P.3d at 1042).  Actually, the *Bresee* court found it
21   "noteworthy" that the insurer *could not determine* from a reading
22   of the complaint whether or not the alleged damage occurred
23   "before or after the completion of Bresee's work."  *Bresee*, 353
24   Or. at 122, 293 P.3d at 1042.  The court noted that from reading
25   the complaint, the property damage either "occurred, or could
26   have occurred" before Bresee's work was completed.  *Id.*  Walsh's
27   third-party complaint contains an identical problem: it is
28   impossible to determine from the face of the complaint whether

or not the alleged damage was due to K&O's activities within the Policy's coverage period.

Navigators, however, urges the court to consider Walsh's original notice of claim, indicating the Willow Tree project was completed in 2005. Navigators also points to admissions Home Forward has made in the Underlying Action, also establishing that all of Walsh's and K&O's work on the project was completed prior to the inception of the Policy. Navigators argues the court may "consider extrinsic evidence when that evidence goes solely to a fundamental issue of coverage which does not overlap the merits or engage the truth or falsity of the underlying facts alleged in the underlying case." Dkt. #27, p. 15. Navigators cites *Fred Shearer* in support of this conclusion, arguing the case stands for the proposition that when the question of coverage "depends on a factual issue which will not be resolved by the underlying lawsuit, the duty to defend may depend on the ***actual facts*** and not the allegations in the complaint." Dkt. #27, p. 15 (emphasis in original; citing *Fred Shearer*, 237 Or. App. at 480, 240 P.3d at 75; in turn citing *Burd v. Sussex Mut. Ins. Co.*, 56 N.J. 383, 388, 267 A.2d 7, 9-10 (1970)). Navigators argues the issue of *when* K&O performed its work on the Willow Tree project is irrelevant to the issue of whether or not K&O's work on the project was defective. Therefore, according to Navigators, because a determination of when K&O's work was performed is irrelevant to the merits of the Underlying Action, it is appropriate for this court to consider extrinsic evidence establishing that K&O's work was completed long before Navigators issued the Policy, thereby absolving

16  - FINDINGS & RECOMMENDATIONS

1  Navigators of any duty to defend K&O in the Underlying Action.
2  Dkt. #27, pp. 15-16. Navigators misconstrues the *Fred Shearer*
3  court's ruling.

4      The *Fred Shearer* court expressly held that "[i]n determining
5  whether a policy exclusion applies to the conduct at issue, we
6  look 'only at the facts alleged in the complaint to determine
7  whether they provide a basis for recovery that could be covered
8  by the policy.'" *Fred Shearer*, 237 Or. App. at 479, 240 P.3d at
9  74 (quoting *Ledford*, 319 Or. at 400, 877 P.2d at 82). Again,
10 the issue is whether the insurer reasonably can interpret any of
11 the allegations in the complaint as falling within the coverage
12 of the policy it issued. The court finds such an interpretation
13 reasonably was possible from the allegations in Walsh's third-
14 party complaint. Walsh simply alleged that K&O had performed
15 work on the Willow Tree project pursuant to a subcontract; Home
16 Forward had alleged numerous defects in the work; and Walsh was
17 seeking to hold K&O liable for its work that was found to be
18 defective. Those allegations gave rise to a duty for Navigators
19 to defend K&O in the Underlying Action. See *Casey*, 260 Or. at
20 489, 491 P.2d at 210 (upholding an insurer's contractual duty to
21 defend its insured despite any dispute about coverage).

22     Perhaps a more interesting question is when does an
23 insurer's duty to defend cease? Once Home Forward responded, on
24 August 9, 2013, to requests for admissions, indicating none of
25 Walsh's or K&O's work was performed on the Willow Tree project
26 after July 12, 2010 (the effective date of the policy Navigators
27 issued to K&O), Navigators had definitive evidence that any
28 liability attributable to K&O in the Underlying Action would not

17  - FINDINGS & RECOMMENDATIONS

be covered under the Policy.  Could Navigators then cease its defense of K&O in the Underlying Action?  The Oregon courts do not appear to have addressed directly the question of when the duty to defend a lawsuit ends.

The prevailing view among other states is that an insurer's duty to defend ends once the insurer "establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision," *Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, 964 N.Y.S.2d 63 (Table), 2011 WL 9557466, at *3 (Sup. Ct. N.Y. Cty. Nov. 18, 2011) (citing cases); or, for example, when all claims that arguably could be covered have been settled or dismissed from the case, *Society Ins. v. Bodart*, 343 Wis. 2d 418, 425, 819 N.W.2d 298, 30 (2012) (citing cases and treatises in agreement).  *See, e.g.*, *Employers Mut. Cas. Co. v. Donelly*, 154 Idaho 499, 300 P.3d 31 (2013) (same) (Jones, J., dissenting; citing cases); *Hastings Mut. Ins. Co. v. Mosher Dolan Cataldo & Kelly, Inc.*, 2013 WL 1149790, at *3 (Mich. Ct. App. Feb. 14, 2013) (duty to defend continues "until such time as the insurer has confined the claims against the insured to those theories that the policy would not cover") (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 207 Mich. App. 60, 67, 523 N.W.2d 841, 844 (1994)); *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) ("duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases"); *Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612, 622 n.4 (Cal. 2010) ("[I]f an insurer's investigation discloses that there is, in fact, no

possibility of coverage . . . the insurer's duties to defend and indemnify cease from that time forward.") (citing cases); *Am. Fam. Ins. Co. v. Chamunda, Inc.*, slip op., 2008 WL 1808335, at *3 (Ohio Ct. App. Apr. 23, 2008) ("In any event, an insurer's duty to defend its insured ends once it is determined there is no possibility of coverage under the policy.") (citing *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74 (1987)); *Aetna Cas. & Sur. Co. v. Kentucky*, 179 S.W.3d 830, 854 (2005) (insurer's duty to defend "ends once the insurer establishes that the liability is in fact not covered by the policy") (citing cases).

Although the prevailing view may seem the most reasonable and logical, it has never been adopted by an Oregon appellate court. In the absence of a similar pronouncement by the Oregon courts, the duty of Navigators to continue defending K&O in the Underlying Action is ongoing.  It is not for this court to extend Oregon law on that issue; it is for the Oregon appellate courts to determine in the first instance. As recently as 2012, in *Bresee*, the Oregon Supreme Court could have addressed this situation, and acknowledged that there is a "back end" to a duty to defend.  It did not.  While a direct answer to this issue from the Oregon courts is not available, the likely answer, under current law, appears to be that extrinsic evidence, no matter how conclusive, cannot be used to end the duty to defend

1   in a situation like the one before the court. Therefore,

2   Navigators's motion for summary judgment should be denied.[1]

3   / / /

4   / / /

5   / / /

6   / / /

7   / / /

8   / / /

9   / / /

10  / / /

11  / / /

12

13                          *SCHEDULING ORDER*

14      These Findings and Recommendations will be referred to a

15  district judge.  Objections, if any, are due by **October 11,**

16  **2013.** If no objections are filed, then the Findings and

17  Recommendations will go under advisement on that date.  If

18  objections are filed, then any response is due by **October 28,**

19

20

21

22
    ─────────────────

23      [1]Navigators indicates that, per the parties' agreement, it
    limited its motion for summary judgment to the discrete issue
    discussed above.  Navigators indicates it also has "numerous
24  other coverage defenses that . . . operate to bar or limit the
    coverage available under the policy for the subject claim," and
25  should the court deny the current motion, "Navigators reserves
    the right to rely on any and all coverage defenses that may be
26  applicable to the subject claims."  Dkt. #27, p. 4 n.2.  Walsh
    is no longer part of the case, and K&O has conceded that
27  Navigators has no duty to indemnify it in the Underlying Action.
    The court fails to see how a ruling on the current motion does
28  not resolve the case entirely, in this court.

20  - FINDINGS & RECOMMENDATIONS

**2013.**  By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 23rd day of September, 2013.


/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge

21  - FINDINGS & RECOMMENDATIONS